# ROBIN LEDBETTER *v.* COMMISSIONER OF CORRECTION
## (SC 17374)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 13—officially released September 13, 2005

*Conrad Ost Seifert*, special public defender, with whom was *Beth A. Hogan*, special public defender, for the appellant (petitioner).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (respondent).

*Marsha L. Levick*, pro hac vice, *Lourdes M. Rosado*, pro hac vice, and *Martha Stone* filed a brief for the Juvenile Law Center et al. as amici curiae.

*Opinion*

ZARELLA, J. The petitioner, Robin Ledbetter, appeals from the judgment of the habeas court denying her amended petition for a writ of habeas corpus alleging ineffective assistance of counsel. The petitioner claims that her trial counsel was ineffective because he conceded that her confession was made voluntarily, thereby precluding her from appealing an issue of state constitutional law. We disagree and, accordingly, affirm the judgment of the habeas court.

In the underlying criminal action, the petitioner was charged with felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in violation of General Statutes §§ 53a-134 (a) (3) and 53a-48 (a), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3) and 53a-49 (a) (2), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). A jury found the petitioner guilty of all charges except robbery in the first degree. The trial court rendered judgment in accordance with the jury verdict, sentencing the petitioner to a total effective term of fifty years imprisonment. We affirmed the trial court's judgment of conviction on appeal. *State* v. *Ledbetter*, 263 Conn. 1, 22, 818 A.2d 1 (2003).

The petitioner thereafter filed this petition for a writ of habeas corpus claiming ineffective assistance of counsel. The habeas court denied the petition and subsequently granted certification to appeal to the Appellate Court. The petitioner appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals the following relevant facts.[1] In the predawn hours of February 24, 1996, the petitioner, a fourteen year old runaway from an "alternative to detention" program affiliated with the department of children and families (department), and Lucis Richardson attempted to rob a taxicab driver by entering the taxicab's backseat and demanding money while threatening the driver with an object that resembled a firearm. When the driver did not respond immediately, Richardson struck the driver with the object. A struggle ensued, and the petitioner fatally stabbed the driver with a kitchen knife.

Using telephone records, officers of the Hartford police department took less than four hours to trace the perpetrators of the crime to an apartment where the petitioner and Richardson had been staying with friends that evening. Id., 6–7. When the police arrived at the apartment, the petitioner fled through a back door. Id., 7. Richardson remained to answer the door and, in response to police questioning, denied that he had any knowledge of the taxicab incident and told the

---

[1] We are mindful that, in a habeas action in which the petitioner alleges ineffective assistance of trial counsel, "the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . ." *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991). The habeas court's findings are supplemented with other undisputed facts as appropriate. Our decision in the petitioner's direct appeal from the judgment of conviction offers a detailed account of the relevant facts underlying the crimes of which the petitioner was convicted. See *State* v. *Ledbetter*, supra, 263 Conn. 5–8.

police that the petitioner had been at the apartment earlier that evening. Id.

The Hartford police located the petitioner and took her into custody on the evening of February 27, 1996. That evening at the police station, the petitioner met privately with her estranged father, Willie Ledbetter, who long ago had relinquished guardianship of the petitioner but retained his parental rights. The petitioner's father encouraged the petitioner to make a statement to the police describing her role in the incident, advising her that it would be in her best interests and a "Christian" thing to do. The petitioner's father also advised the petitioner that, because she claimed not to have stabbed the victim, she could not be charged with murder, and that, because she was a juvenile, she could not be held beyond her eighteenth birthday.[2]

While the petitioner's father had had considerable experience with Connecticut's criminal courts as a consequence of his own criminal record, his advice was inaccurate on both points. The petitioner was unaware of this inaccuracy, however, when she received her father's advice. The police never informed the petitioner that her case could be transferred to the regular criminal docket and, if so, that she would be tried and sentenced as an adult.

Disregarding the advice of a department social worker that she consult an attorney, the petitioner waived her *Miranda*[3] rights and tendered a written statement to the police shortly after midnight on February 28, 1996. In her statement, the petitioner described her active role in the attempted robbery, but accused Richardson of inflicting the fatal stab wound. The peti-

---

[2] The petitioner's father testified at the habeas trial that his understanding of the law was that "the most time [the authorities] would have held [the petitioner] was until she was twenty-one."

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

tioner was arrested and charged with the victim's murder. Thereafter, her case automatically was transferred from juvenile court to the regular criminal docket.[4]

Assistant public defender Michael Isko represented the petitioner at her criminal trial. Prior to trial, Isko filed a motion to suppress the petitioner's statement to the police on the grounds that the petitioner: (1) was not advised, or at least was provided with incomplete information, about the consequences of her statement, one of which was that her case could be transferred to the regular criminal docket; and (2) received no information about the role or function of counsel. As a consequence, Isko argued, the petitioner had not "voluntarily, knowingly and intelligently waive[d] her *Miranda* rights . . . and her statement was not voluntary, knowingly and intelligently made."

At the December 16, 1999 suppression hearing, however, Isko conceded that the petitioner had made her statement voluntarily. In response to the court's questioning, Isko repeatedly confirmed that the petitioner had made her statement voluntarily while continuing to contend that she had not made it "intelligently and knowingly . . . ."[5] The trial court denied the motion

[4] Once the petitioner was charged with felony murder, a class A felony; see General Statutes §§ 53a-45 and 53a-54c; she could not be tried and sentenced as a juvenile. See General Statutes (Rev. to 1995) § 46b-127 (a), as amended by Public Acts 1995, No. 95-225, § 13 ("[t]he court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of . . . a class A . . . felony . . . provided such offense was committed after such child attained the age of fourteen years").

[5] The following colloquy ensued at the suppression hearing:

"The Court: . . . [Y]ou're not challenging the voluntariness of the statement?

"[Isko]: Correct.

\* \* \*

"The Court: What is your main thrust of attack?

"[Isko]: The main thrust of the argument is that the statement was made because [the petitioner] did not intelligently or—she was not knowledgeable and intelligent concerning the consequences of her waiver, and she did not receive information that would give her that knowledge.

to suppress, concluding that the petitioner's statement was knowing, intelligent and voluntary. In so concluding, the trial court considered the totality of the circumstances, including Isko's concession regarding voluntariness.

Isko later explained that he conceded voluntariness "to preclude" the court from charging the jury regarding the statement's voluntariness. Isko believed that any charge regarding voluntariness would harm his client's chances with the jury by highlighting the state's "very powerful evidence" contradicting any possible claim of involuntariness by the petitioner.[6]

Following her conviction and sentencing, and an unsuccessful direct appeal to this court,[7] the petitioner filed this petition for a writ of habeas corpus. The petitioner claimed that Isko ineffectively had represented her at trial and had prejudiced her defense, thereby violating her rights under the United States and Connecticut constitutions.[8]

---

"The Court: All right. But is it fair to say that your principal thrust is that the waiver was not *intelligently, knowingly or voluntarily* made?

"[Isko]: Yes, *intelligently and knowingly* made, I feel, would be more accurate and fair." (Emphasis added.)

[6] Isko was referring particularly to the petitioner's father, who "was there for his daughter, listened to what she had to say and gave her his heartfelt advice," and the social worker who encouraged the petitioner to seek legal counsel. Isko stated that, from his perspective and in light of the testimony available to him, "the voluntariness issue . . . stunk."

[7] The petitioner did not raise issues regarding Isko's concession of voluntariness in her direct appeal. See generally *State* v. *Ledbetter*, supra, 263 Conn. 9–22.

[8] The petitioner also asserted a second claim, which concerned Isko's handling of a witness who spoke at the petitioner's sentencing hearing. The petitioner, however, did not pursue this claim at her habeas trial. The habeas court determined that, "in her brief, [the] '[p]etitioner limit[ed] the issue of . . . Isko's alleged ineffectiveness to one narrow question. Was he ineffective when he conceded voluntariness of the [petitioner's] confession . . . ?' " In accordance with the habeas court's determination, we conclude that the petitioner abandoned her second claim before that court.

Before the habeas court, the petitioner identified Isko's concession of voluntariness as the only deficient aspect of his performance. The petitioner argued that, by failing to preserve the issue of voluntariness, Isko had precluded her from appealing on the theory that the failure of the police to inform her that she could be charged and tried as an adult rendered her statement involuntary, in violation of article first, § 8, of the constitution of Connecticut.[9]

The respondent, the commissioner of correction, countered that Isko's decision to concede voluntariness was largely immune from judicial second-guessing as a "strategic or tactical [choice] . . . ." The respondent also argued that, even if Isko had performed deficiently, "the petitioner has still failed to show that the deficient performance prejudiced [her defense]. In addition to the [petitioner's] confession . . . there was more than enough evidence to sustain a verdict of guilty."

The habeas court applied the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which requires an ineffective assistance of counsel claim to be supported by evidence establishing both (1) counsel's deficient performance, and (2) prejudice suffered by the claimant as a result of such deficient performance. With respect to the first element, the habeas court characterized Isko's concession as a "tactical decision," which, "[a]s a rule, courts are reluctant to second guess . . . ." With respect to the second element, the habeas court concluded that the statement's voluntariness "remained an issue throughout the trial and was presented to the jury," and, therefore, that Isko's concession did not prejudice the petitioner's defense. The habeas court also rejected the petitioner's theory based on her right against self-

---

[9] Article first, § 8, of the constitution of Connecticut guarantees that "[n]o person shall be compelled to give evidence against himself . . . ."

incrimination under article first, § 8, as "speculative at best." Accordingly, the habeas court denied the petition.

We begin our discussion by noting that the effectiveness of an attorney's representation of a criminal defendant is "a mixed determination of law and fact that . . . requires plenary review . . . ." (Citation omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991). The sixth amendment to the United States constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const., amend. VI. "It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Internal quotation marks omitted.) *Phillips* v. *Warden*, supra, 132.

A claim of ineffective assistance of counsel consists of two components: a "performance prong" and a "prejudice prong." To satisfy the performance prong, a claimant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland* v. *Washington*, supra, 466 U.S. 687. To satisfy the "prejudice prong," a claimant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 694. The claim will succeed only if both prongs are satisfied.

The petitioner claims that Isko ineffectively represented her by failing to preserve the issue of the voluntariness of her written confession, thereby precluding an appeal based on the theory that article first, § 8, of the constitution of Connecticut "requires that a juvenile suspect be told that he or she may (or will) be tried as an adult . . . in adult court . . . ."

The petitioner relies on *State* v. *Perez*, 218 Conn. 714, 722, 591 A.2d 119 (1991), in which the defendant, Paul Perez, advanced the same theory as the defendant in

the present case now advances. In that case, fourteen year old Perez waived his *Miranda* rights and confessed to a murder. Id., 717–21. Perez entered a conditional plea of nolo contendere and was sentenced as an adult after a trial court denied his motion to suppress the confession. Id., 717–18. On appeal to this court, Perez claimed that the failure of the police to advise him that he "was subject to criminal prosecution as an adult, rather than [as a juvenile]"; id., 724; had rendered his confession unknowing, unintelligent, and involuntary in violation of the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution. See id., 722, 724. Perez urged a per se rule requiring the police to give such a warning to juvenile suspects. See id., 722.

This court rejected Perez' federal constitutional claim, concluding that the fifth amendment requires only that a "totality of the circumstances" test be applied to the statements of juvenile suspects. Id., 726–27. Applying this test, we upheld the trial court's finding that Perez' confession was voluntary, knowing and intelligent. Id., 728. We declined, however, to consider Perez' claim under article first, § 8, due to his inadequate briefing of the issue. Id., 723. We therefore left undecided the issue of whether article first, § 8, requires the police to advise juvenile suspects that they may be prosecuted as adults.

The petitioner nonetheless contends that "*Perez* was a road map for a competent defense lawyer to follow . . . ." The petitioner asserts that the issue of whether article first, § 8, requires the police to make a similar warning to juvenile suspects "never should have been waived by . . . Isko."

The respondent counters that the petitioner has not satisfied either of *Strickland*'s two prongs. With respect to the performance prong, the respondent argues that

Isko's performance simply was not deficient insofar as Isko was not required to recognize and to preserve a novel state constitutional argument. Alternatively, the respondent argues that Isko's choice to concede voluntariness was a reasonable tactical decision. With respect to the prejudice prong, the respondent argues that the petitioner was not prejudiced by Isko's concession, first, because she was not precluded from raising her theory under article first, § 8, on direct appeal from the judgment of conviction and, second, because her theory lacks merit. The respondent further asserts, as an alternative ground for affirmance, that we "need not and should not reach the novel issue of whether article first, § 8 . . . requires that juvenile felony suspects be told that they may be treated as adult offenders because, as a matter of law . . . Isko's failure to recognize and preserve that issue for appeal did not constitute deficient performance." We agree with the respondent.

Turning first to the performance prong, we note that the petitioner must show that Isko's representation "fell below an objective standard of reasonableness" in order to establish ineffective performance. *Strickland* v. *Washington*, supra, 466 U.S. 688. In other words, the petitioner must demonstrate that Isko's representation was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *State* v. *Clark*, 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). In analyzing Isko's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 689. The petitioner bears the burden of overcoming this presumption. Id.

First, to perform effectively, counsel need not "recognize and raise every conceivable constitutional claim."

*Engle* v. *Isaac*, 456 U.S. 107, 134, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). In *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 425–28, 589 A.2d 1214 (1991), modified on other grounds, *Jackson* v. *Commissioner of Correction*, 219 Conn. 215, 592 A.2d 910 (1991), we held that defense counsel's failure to recognize and to raise an equal protection challenge to a state statute governing jury selection did not constitute ineffective assistance despite other defendants' subsequent successful equal protection challenges to the same statute. Likewise, Isko's failure to recognize and to raise the petitioner's theory of article first, § 8—regardless of the theory's prospects for success and the fact that it had been identified in *Perez*—does not, in and of itself, constitute ineffective assistance.

Moreover, numerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance. E.g., *Anderson* v. *United States*, 393 F.3d 749, 754 (8th Cir. 2005) ("[c]ounsel's failure to raise [a] novel argument does not render his performance constitutionally ineffective"); *Box* v. *Petsock*, 697 F. Sup. 821, 835 (M.D. Pa. 1987) ("[c]ounsel is not required to . . . pursue novel theories of defense"), aff'd mem., 860 F.2d 1074 (3d Cir. 1988), cert. denied, 489 U.S. 1028, 109 S. Ct. 1161, 103 L. Ed. 2d 219 (1989); *Weaver* v. *State*, 339 Ark. 97, 102, 3 S.W.3d 323 (1999) ("[a]n attorney is not ineffective for failing to raise every novel issue which might conceivably be raised"); *Haight* v. *Commonwealth*, 41 S.W.3d 436, 448 (Ky.) ("while the failure to advance an established legal theory may result in ineffective assistance of counsel under *Strickland*, the failure to advance a novel theory never will"), cert. denied, 534 U.S. 998, 122 S. Ct. 471, 151 L. Ed. 2d 386 (2001); *People* v. *Reed*, 453 Mich. 685, 695, 556 N.W.2d 858 (1996) ("counsel's performance cannot be deemed deficient for failing to advance a novel legal argument");

*Commonwealth* v. *Jones*, 571 Pa. 112, 131, 811 A.2d 994 (2002) ("[c]ounsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts"). Nor is counsel required to "change then-existing law" to provide effective representation. *Bailey* v. *State*, 472 N.E.2d 1260, 1265 (Ind. 1985). Counsel instead performs effectively when he elects "to maneuver within the existing law, declining to present untested . . . legal theories." *State* v. *McNeill*, 83 Ohio St. 3d 438, 449, 700 N.E.2d 596 (1998), cert. denied, 526 U.S. 1137, 119 S. Ct. 1792, 143 L. Ed. 2d 1019 (1999).

The petitioner has not demonstrated that Isko did anything except conform to the existing law of this state. The petitioner's theory of article first, § 8, was a novel one; it had (and has) never been accepted by the courts of this state, and, consequently, its chances of success were speculative. See *State* v. *Perez*, supra, 218 Conn. 723–24. Isko's failure to adopt and to advance such a speculative theory, therefore, does not render his performance ineffective. See *Elledge* v. *Dugger*, 823 F.2d 1439, 1443 (11th Cir.) ("[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop"), modified on other grounds, 833 F.2d 250 (11th Cir. 1987), cert. denied, 485 U.S. 1014, 108 S. Ct. 1487, 99 L. Ed. 2d 715 (1988); see also *Walton* v. *State*, 847 So. 2d 438, 445 (Fla. 2003) ("counsel cannot be faulted for failing to assert claims that did not exist at the time [he] represented [the defendant]"). To conclude that counsel is obligated to recognize and to preserve previously undecided constitutional claims, the viability of which is purely speculative, would be to require criminal defense lawyers to possess a measure of clairvoyance that the sixth amendment surely does not demand.

Finally, counsel's "failure to raise every issue which might have support from other jurisdictions" does not constitute ineffective assistance of counsel. *Honeycutt* v. *Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983); see also *Nelson* v. *Estelle*, 642 F.2d 903, 908 (5th Cir. 1981) ("[c]ounsel is normally not expected . . . to research parallel jurisdictions"). The petitioner's intimation that Isko should have looked to *State* v. *Benoit*, 126 N.H. 6, 490 A.2d 295 (1985),[10] in support of her theory under article first, § 8, therefore, also does not bear on the effectiveness of his performance. Isko's failure to preserve a novel state constitutional argument, especially one supported only by the law of some other states, is not an ineffective performance within the meaning of the sixth amendment.[11]

---

[10] *Benoit* reached the conclusion championed by the petitioner under the New Hampshire constitution: "[W]hen a confession is to be admitted against a child in adult criminal court . . . for a judge to conclude that the statements were made knowingly and intelligently, the child, when facing a charge that would be a felony if committed by an adult, must have been advised of the possibility of his being tried as an adult and of his being subject to adult criminal sanctions." *State* v. *Benoit*, supra, 126 N.H. 17.

[11] Finally, we briefly address an argument that the petitioner raises in her reply brief in response to the respondent's argument that a failure to raise a previously *unrecognized* constitutional argument is not ineffective assistance of counsel. The petitioner suggests that Isko recognized the potential claim regarding the application of article first, § 8, to juveniles but nonetheless failed to preserve it at the suppression hearing. Isko's abandonment of a previously recognized issue, the petitioner contends, forms an independent basis for deeming his performance ineffective.

The record, however, does not support the petitioner's contention that Isko recognized a potential claim under article first, § 8, prior to the suppression hearing, or at any other time. Isko testified before the habeas court that he had "looked at [the voluntariness issue] as a coercion matter rather than also taking into consideration the other due process issues that exist in that claim . . . ." This testimony directly contradicts the petitioner's argument that Isko recognized voluntariness not as a "coercion matter" but, rather, as a state constitutional matter. The petitioner's habeas counsel did not clarify this discrepancy at the habeas trial by asking Isko about his understanding of article first, § 8, when Isko filed the motion to suppress. It is also significant that Isko's trial court brief in support of the motion to suppress provides no independent analysis under article first, § 8. As both the content of Isko's brief and his testimony before the habeas court belie

A court evaluating an ineffective assistance claim need not address both components of the *Strickland* test "if the [claimant] makes an insufficient showing on one." *Strickland* v. *Washington*, supra, 466 U.S. 697. As the petitioner has failed to satisfy *Strickland*'s performance prong, we need not, and do not, analyze her claim with reference to *Strickland*'s prejudice prong.[12]

The judgment is affirmed.

In this opinion the other justices concurred.

the petitioner's contention that Isko recognized a potential claim under article first, § 8, the petitioner's argument is untenable.

[12] The fact that the habeas court reached the same result by relying on *Strickland*'s prejudice prong is inconsequential: "This court is authorized to rely upon alternative grounds supported by the record to sustain a judgment." *State* v. *Siano*, 216 Conn. 273, 282 n.8, 579 A.2d 79 (1990).