******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CASMIER ZUBROWSKI *v.* COMMISSIONER
OF CORRECTION
(AC 43981)

Bright, C. J., and Moll and Bear, Js.

*Syllabus*

The petitioner, who had been convicted of murder in connection with the death of his wife, sought a writ of habeas corpus, claiming that he received ineffective assistance from his criminal trial counsel. At the criminal trial, the petitioner's trial counsel had acknowledged that the petitioner killed the victim and raised the defenses of extreme emotional disturbance and intoxication. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly concluded that the petitioner's trial counsel did not render ineffective assistance by declining to consult with and present the testimony of a crime scene reconstruction expert, the petitioner having failed to demonstrate deficient performance: although the petitioner argued that a crime scene reconstruction expert could have reviewed conclusions made by S, a detective who testified about the crime scene, and could have determined whether the evidence at the crime scene supported the defense theories, the decision of the petitioner's trial counsel not to consult with a crime scene reconstruction expert was reasonable given that S's testimony did not undermine the petitioner's theory of the case and because, through their cross-examination of S and during closing arguments, they were able to highlight the potential concerns regarding the crime scene and argue that the haphazard nature of the petitioner's alleged efforts to clean up the crime scene supported the theories of defense regarding the petitioner's mental state.

2. The habeas court properly concluded that the petitioner's trial counsel did not render ineffective assistance by declining to consult with and present the testimony of a forensic toxicologist, the petitioner having failed to demonstrate deficient performance: although the petitioner argued that a forensic toxicologist could have testified about the effects of his prescription medications to support his intoxication defense, apart from the evidence about his alcohol consumption, there was no evidence in the record regarding whether the petitioner took any of his prescription medications prior to committing the homicide.

3. The petitioner could not prevail on his claim that his trial counsel provided ineffective assistance by failing to adequately object to or otherwise seek to preclude the testimony of B, the petitioner's daughter, regarding his prior misconduct: because the record confirmed that there was ample evidence that the petitioner killed the victim, a fact admitted by the petitioner during the criminal and habeas trials, and that the jury considered, and rejected, the petitioner's extreme emotional disturbance and intoxication defenses, the petitioner could not demonstrate that there was a reasonable probability that the outcome of his criminal trial would have been different in the absence of his counsel's allegedly deficient performance; moreover, in the petitioner's direct appeal, this court concluded that the trial court minimized the potential prejudice of the prior misconduct evidence by giving the jury detailed limiting instructions as to the role that evidence was to play in its deliberations, which further supported this court's conclusion in the present appeal that the petitioner failed to demonstrate the prejudice necessary to prevail on his ineffective assistance of counsel claim.

Argued September 21, 2021—officially released January 11, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certi-

fication, appealed to this court. *Affirmed.*

*Andrew P. O'Shea*, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, and *Tamara Grosso*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Casmier Zubrowski, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court incorrectly concluded that his trial counsel did not provide ineffective assistance as defined in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts, as recited by this court in the petitioner's direct appeal, and procedural history are relevant to our resolution of this appeal. "On January 1, 2002, the [petitioner] and his wife, the victim, lived in a condominium complex in Bristol. At approximately 7 or 8 p.m., on December 31, 2001, the [petitioner] invited his brother, Bruno Zubrowski [Bruno], who lived in the same complex, to celebrate New Year's Eve with them at their condominium. During the evening, the brothers and the victim consumed substantial amounts of alcohol, including beer, vodka and schnapps. The [petitioner] consumed most of the vodka and also drank one to two beers. At approximately 10 p.m., an argument ensued concerning the cause of a hole in the drywall in the [petitioner's] home. Feeling uncomfortable with this argument, [Bruno] decided to return to his own condominium. The [petitioner] accompanied his brother back to his condominium where he 'picked up a couple of beers' after which he returned home.

"At 12:53 a.m., Officer Albert Myers, a dispatcher for the Bristol [P]olice [D]epartment, received a 911 call from the [petitioner], who told the officer that his wife was dead, that she had slashed her throat and that she was not breathing. After Myers advised the [petitioner] that assistance would be sent promptly, the [petitioner] stated, 'immediately, I mean, this—this may not be half an hour ago. I was upstairs, you know. I don't—the blood is all over.' Although the call was terminated abruptly, Myers called back and asked what had happened. The [petitioner] again requested assistance, stating that he thought his wife was dead. Also, in response to Myers' questions, the [petitioner] reiterated that he did not know what had happened, that he and his wife had gotten into an argument and that his wife said that she was going to slash her throat. The [petitioner] also stated that he had gone upstairs and then had returned downstairs, and 'there was blood all over.'

"Officers Lawrence DeSimone and Thomas Grimaldi responded to the 911 call, arriving at the [petitioner's] home while he was still talking on the phone with Myers. When the officers knocked on the door, the [petitioner] responded, clad only in white, blood spattered briefs. He told the officers that 'his wife had cut her throat

and she was dead.' The officers and the [petitioner] then walked to the kitchen where the victim was lying motionless on her back on the floor with a substantial amount of blood spread about the kitchen area. The officers also noted that the victim had lacerations about her throat and face and that a knife lay adjacent to her. Faced with this scene, Grimaldi asked DeSimone to take the [petitioner] into the living room.

"Once DeSimone escorted the [petitioner] into the living room, he had the [petitioner] sit down and he asked him, 'what happened?' The [petitioner] stated that when he arrived home from work, he had found his brother and his wife drinking and that his brother had left shortly after he arrived. He told DeSimone that he and his wife argued about a hole in the drywall at the base of the stairwell and that she said she was going to cut her throat. The [petitioner] stated that because she had made the same threat before, he did not take it seriously and went to bed. He further stated that one hour later, while he was upstairs, he heard a loud crash and called out and heard no answer. He then went downstairs where he found his wife lying on the kitchen floor. He turned her over and attempted to resuscitate her and then ran to his brother's condominium. Getting no response from his brother, he returned home and called the police.

"From the house, DeSimone and Grimaldi called Detective Kevin Hayes to investigate. After introducing himself to the [petitioner], Hayes asked the [petitioner] to come to the police station and make a statement. At that juncture and unprovoked by any questioning from Hayes, the [petitioner] told him that 'she killed herself, you know, she cut her throat, you know,' which, in essence, was the same information he had disclosed to the 911 dispatcher and DeSimone. The [petitioner] agreed to accompany Hayes to the police station where he made a written statement, the contents of which were similar to the version of events that he had given to the police at his home.

"The [petitioner] subsequently was charged with murder in violation of [General Statutes] § 53a-54a. After the jury found the [petitioner] guilty, he was sentenced to a total effective term of imprisonment of thirty-five years." *State* v. *Zubrowski*, 101 Conn. App. 379, 381–83, 921 A.2d 667 (2007), appeal dismissed, 289 Conn. 55, 956 A.2d 578 (2008), cert. denied, *Zubrowski* v. *Connecticut*, 555 U.S. 1216, 129 S. Ct. 1533, 173 L. Ed. 2d 663 (2009). The petitioner was represented at his criminal trial by attorneys Jeffrey Kestenband and William Paetzold.

On September 14, 2017, the petitioner filed a petition for a writ of habeas corpus, alleging that his constitutional right to the effective assistance of counsel had been violated. The petitioner's ineffective assistance claims were premised on three allegations of deficient performance, namely, that trial counsel failed to (1)

adequately consult with and present the testimony of a crime scene reconstruction expert, (2) adequately consult with and present the testimony of a forensic toxicologist or present another source of evidence regarding the effects of his prescription medications, and (3) adequately object to or otherwise seek to preclude the testimony of the petitioner's daughter, Beata Zubrowski (Beata).[1]

On February 10, 2020, after a trial, the habeas court rendered judgment denying the petition for a writ of habeas corpus after concluding that "[t]he petitioner . . . failed to prove his claims of ineffective assistance by Attorneys Kestenband and Paetzold." On February 20, 2020, the petitioner filed a petition for certification to appeal from the habeas court's denial of his three claims of ineffective assistance, which petition was granted by the habeas court, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth our standard of review and the legal standards relevant to the petitioner's claims. Although "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous"; (internal quotation marks omitted) *Mozell* v. *Commissioner of Correction*, 87 Conn. App. 560, 564–65, 867 A.2d 51, cert. denied, 273 Conn. 934, 875 A.2d 543 (2005); "the effectiveness of an attorney's representation of a criminal defendant is a mixed determination of law and fact that . . . requires plenary review . . . ." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

When reviewing a claim of ineffective assistance of counsel, a "court can find against a petitioner on either ground, whichever is easier." *Valeriano* v. *Bronson*, 209 Conn. 75, 86, 546 A.2d 1380 (1988). To satisfy the performance prong of *Strickland*, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness in order to establish ineffective performance. . . . In other words, the petitioner must demonstrate that [counsel's] representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . In analyzing [coun-

sel's] performance, we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . The petitioner bears the burden of overcoming this presumption." (Citations omitted; internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, supra, 275 Conn. 460. To satisfy the prejudice prong of *Strickland*, "a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) Id., 458.

I

The petitioner's first claim is that his right to the effective assistance of counsel was violated by the failure of Kestenband and Paetzold to consult with and present the testimony of a crime scene reconstruction expert.[2] Specifically, the petitioner argues that, because "the state's crime scene reconstructionist [Detective Nicholas F. Sabetta of the Connecticut State Police] . . . provided opinions that undermined [the petitioner's] theory of the case . . . any competent counsel would have . . . consulted with an independent crime scene reconstructionist to review . . . Sabetta's conclusions and determine whether there was any evidence in the crime scene supporting the mental state defenses being pursued." The petitioner further argues that, but for the failure of Kestenband and Paetzold to conduct such a consultation, there is a reasonable probability that the outcome of the trial would have been more favorable to the petitioner. In response, the respondent, the Commissioner of Correction, argues, inter alia, that the habeas court correctly concluded that Kestenband and Paetzold did not perform deficiently because they engaged in extensive cross-examination of Sabetta and addressed the issue of the petitioner's conduct after the victim's death during closing argument. We agree with the respondent.

At the petitioner's criminal trial, Sabetta testified, as the habeas court recounted, "about the crime scene, his investigation, and the extensive report he authored." After the conclusion of the state's direct examination of Sabetta, Paetzold[3] cross-examined Sabetta. The focus of the cross-examination was to establish that the petitioner, because of his then-existing mental state, was unable to make any meaningful or coherent effort to clean up the bloody crime scene in order to hide his commission of the crime. In his closing argument, Paetzold attempted to discredit the statements Sabetta made about the crime scene and the petitioner's alleged efforts to clean up the crime scene, arguing that the petitioner did not have the state of mind necessary to clean up the crime scene in any meaningful way or otherwise to do anything that evidenced consciousness of guilt. He also recalled for the jury the testimony of

David Krulee, a forensic psychiatrist, which he argued supported the petitioner's defenses of extreme emotional disturbance and intoxication.[4]

In light of Paetzold's cross-examination of Sabetta and his closing argument, as well as our review of the record, we agree with the habeas court that Kestenband and Paetzold did not render deficient performance by declining to consult with a crime scene reconstruction expert. Upon our review of the record, we also agree with the habeas court that Sabetta's testimony did not undermine the petitioner's theory of the case. As the habeas court stated in its well reasoned decision: "The crime scene does reflect some cleanup efforts, which may have been haphazard. This is not inconsistent with the petitioner's dual defenses. As elicited through cross-examination of . . . Sabetta and argued to the jury during closing argument, the haphazard and incomplete nature of the cleanup indicates that the petitioner was not aware of what he was doing and, instead, was still operating under the influence of intoxicants or extreme emotional disturbance. . . . Paetzold highlighted the lack of wipe marks and the lack of heavy blood stains leading to the bathroom. He pointed out that there were no stains on the bottle of [carpet cleaner] which undermines the theory that it was used to clean up the scene. He argued to the jury that, in fact, the incomplete and haphazard cleaning supported the theory that the petitioner killed his wife under the fog of either intoxication or [extreme emotional disturbance], went up to bed and then woke up a few hours later to discover what had happened. This was an entirely sound theory given the state of the evidence.

"Given all of the foregoing, the court concludes that the petitioner has failed to show that trial counsel rendered deficient performance by not consulting with a crime scene reconstruction expert. . . . [T]rial counsel did not view the crime scene evidence as evidence that would alter the dual defenses they developed. The defense strategy and decision to not consult with and utilize a crime scene reconstruction expert were reasonable . . . . The cross-examination of . . . Sabetta during the criminal trial was effective and brought to the jury's attention potential concerns regarding the crime scene and the haphazard nature of the cleanup that supported the petitioner's defenses." Accordingly, with respect to the petitioner's claim that his trial counsel provided ineffective assistance by failing to consult with a crime scene reconstruction expert, the habeas court properly concluded that the petitioner failed to show deficient performance as required by *Strickland*.

## II

The petitioner next claims that his right to the effective assistance of counsel was violated by the failure of Kestenband and Paetzold to consult with and present the testimony of a forensic toxicologist. Specifically,

the petitioner argues that "competent counsel would have investigated the effects of the various prescription drugs he had been taking at the time of [the victim's] death," and that "[h]ad trial counsel adduced such evidence . . . there is a reasonable probability that the outcome of the trial would have been more favorable to the petitioner." In response, the respondent argues that Kestenband and Paetzold were not ineffective in not hiring a forensic toxicologist "[b]ecause there was no evidence that the petitioner took any of his medications on the night of the crime . . . ." We agree with the respondent.

At the petitioner's criminal trial, Kestenband and Paetzold presented the testimony of Phillip Watsky, the petitioner's primary care physician from May, 1997, to September, 2001. Watsky testified that, during this period of time, he treated the petitioner for hypertension and elevated cholesterol levels, as well as for prostate cancer after he was diagnosed in 2000. Watsky testified that, while he was treating the petitioner, he prescribed the following medications: Alprazolam for anxiety; Percocet for back pain; Diovan for high blood pressure; and Lipitor for elevated cholesterol. Watsky further testified that "Diovan and Lipitor were . . . taken on a daily basis . . . [and] Percocet and . . . Alprazolam were taken on an as needed basis."

On the basis of this testimony, and the testimony of Bruno that "he heard a pill bottle rattling noise coming from the petitioner's pants pocket," the petitioner now argues that "it is an entirely obvious and reasonable inference to make that an individual afflicted with life-threatening cancer would take the medications . . . ." Having reviewed the record, however, we agree with the conclusion of the habeas court that "it is entirely speculative [whether] the petitioner took any of his prescribed medications prior to committing the homicide . . . [because] [t]here is no evidence shedding light [on the question of] whether the petitioner took any medications preceding the homicide." Because there is no such evidence in the record, the petitioner failed to prove that Kestenband and Paetzold provided ineffective assistance by failing to consult with and present the testimony of a forensic toxicologist. Accordingly, the petitioner failed to show that the representation provided by his trial counsel constituted ineffective assistance with respect to this claim.

### III

The petitioner's final claim is that his right to the effective assistance of counsel was violated by the failure of Kestenband and Paetzold to adequately object to or otherwise seek to preclude Beata's testimony regarding the petitioner's prior misconduct. Specifically, the petitioner argues that "there was no reasonable strategic basis to reject the state's offer to limit Beata's prior misconduct testimony," and that there is

a reasonable probability that, but for trial counsel's deficient performance, the outcome of the criminal trial would have been more favorable to the petitioner. In response, the respondent argues, inter alia, that the habeas court was correct in concluding that the petitioner failed to show prejudice arising from counsel's handling of Beata's testimony. We agree with the respondent.

In its memorandum of decision, the habeas court set forth the following relevant facts and procedural history: "Trial counsel objected to the state calling [Beata] as a witness. That objection, in part made on the ground that her testimony would be prejudicial to the [petitioner], was overruled. After trial counsel consulted with the petitioner, [they] indicated [that they were] willing to stipulate to [the] identity of the petitioner as the individual who committed the homicide in exchange for the state not putting on evidence of the petitioner's prior violence toward [the victim]. The [state] indicated that [it] was willing to agree to the [petitioner's] proposal but reserved the right to call [Beata] if the [petitioner] did not follow through with the stipulation, as well as ask her generally about the petitioner's attitude toward [the victim] without getting into specific prior acts of violence.

"Attorney Kestenband expressed concern to the court that the [petitioner] did not know what [Beata] would testify to, so the [petitioner] was operating at a disadvantage. The court recessed to give trial counsel the opportunity to work out the stipulation. After the recess, the court indicated that counsel and the court had discussed in chambers how to proceed: [Beata] would testify in the absence of the jury, after which defense counsel could discuss her testimony with the petitioner and decide whether or not they would agree to enter into a stipulation. [Beata] then testified in the absence of the jury. After an additional recess, [Kestenband] indicated to the court that the [petitioner] would not stipulate and that [Beata's] testimony to the jury could proceed.

"[Beata's] testimony included . . . her recounting for the jury an incident in which [the petitioner] was violent toward [the victim]. According to [Beata], [the victim] was friendly and easy going. She described the petitioner as mostly disrespectful toward [the victim]. [Beata] recalled a family picnic during which the petitioner's conduct toward [the victim] became violent. The petitioner, according to [Beata], became physically violent several times . . . by grabbing [the victim] by her hair and pulling her toward him with force.

"In addition to her testimony about the picnic incident, [Beata] testified that the petitioner called her the morning after the homicide. The petitioner informed her [that] the police were there and that [the victim] was dead. The petitioner explained what he encoun-

tered after he went downstairs and discovered the crime scene. The petitioner also told her that the victim must have killed herself. [Beata] testified that the petitioner wanted her to come over and help him because he did not know what to do. She refused to go over to the petitioner's house, which caused the petitioner to be verbally abusive to her . . . . [Beata] then hung up the telephone. On cross-examination, [Kestenband] elicited from [Beata] that the petitioner was a chronic alcoholic who always had a drink in his hand when she saw him. The petitioner, however, usually did not appear drunk to her in spite of the alcohol he was consuming."

The petitioner now argues that Kestenband and Paetzold rendered deficient performance by deciding not to enter into a stipulation with the state to limit Beata's testimony regarding the petitioner's prior misconduct and that he was prejudiced by this allegedly deficient performance. Specifically, the petitioner argues that, if Kestenband and Paetzold had followed through with the proposed stipulation, there is a reasonable probability that the outcome of the proceedings would have been different because "[t]he state's case against the petitioner on the murder charge was far from compelling, as evidenced by the more than two full days the jury took for its deliberations." We conclude, as did the habeas court, that the petitioner has failed to establish prejudice.

When addressing Beata's testimony, the habeas court stated: "[T]he petitioner has failed to show how he was prejudiced . . . . There was ample evidence that the petitioner killed his wife; the [extreme emotional disturbance] and intoxication defenses were considered by the jury but rejected. . . . Further supporting this court's conclusion is our Appellate Court's holding that the trial court did not err in admitting [Beata's] testimony because it 'was probative and not unduly prejudicial and admissible . . . on the issues of intent and motive.' "[5] We agree with the conclusion of the habeas court. Our review of the record confirms that there was ample evidence that the petitioner killed the victim, a fact admitted by the petitioner during the criminal and habeas trials, and that the jury considered, and rejected, the petitioner's extreme emotional disturbance and intoxication defenses. This conclusion is further supported by the decision of this court in the petitioner's direct appeal, in which we concluded, in the context of reviewing the admissibility of Beata's testimony, that "the [trial] court minimized the potential prejudice to the [petitioner] of the prior misconduct evidence by giving the jury detailed limiting instructions as to the role the evidence was to play in its deliberations, and the court repeated its admonition to the jury in its final instructions." *State* v. *Zubrowski*, supra, 101 Conn. App. 396.

We conclude that the petitioner has failed to show

that there is a reasonable probability that, but for the decision of Kestenband and Paetzold not to further object to or otherwise seek to preclude Beata's testimony regarding the petitioner's prior misconduct, the result of the proceeding would have been different. Accordingly, because the petitioner failed to show that he was prejudiced by the allegedly deficient performance of his trial counsel, his claim of ineffective assistance of counsel must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner, in his posttrial habeas brief, acknowledged that the sole issue at his criminal trial was his state of mind when he killed his wife. The petitioner argued that he did not have the specific intent required for the crime of murder, and he set forth the affirmative defense of extreme emotional disturbance. He also set forth an intoxication defense.

[2] The habeas court noted that the petitioner's arguments concerning this claim were "tethered to the central issue at the criminal trial: his mental state at the time he killed his wife."

[3] The habeas court noted that Paetzold, prior to attending law school, was employed by the State Forensics Laboratory in the field of criminalistics, including arson analysis and crime scene reconstruction.

[4] Addressing the testimony of Krulee, the habeas court stated: "Krulee concluded that the petitioner was overcome by intense anger and lost self-control due to the combination of that anger and his intoxication. . . . Krulee thought there were three distinct psychological/psychiatric phases the petitioner experienced that night: first, intoxication and dissociation; second, sleep and amnesia; and third, acute stress upon finding his dead wife and not remembering that he had committed the violent killing."

[5] The habeas court also found that trial counsel's decisions concerning Beata's testimony were reasonable under the circumstances existing during the trial and did not constitute deficient performance: "Trial counsel's decisions during the trial, in response to the court's denial of the [petitioner's] motion in limine, were reasonable. The state was willing to stipulate with the defense, but was only willing to forgo asking [Beata] about specific acts of violence. Trial counsel's benefit/harm assessment of [Beata's] testimony must be accorded deference unless there were no reasonable strategic grounds to not stipulate. *Strickland* v. *Washington*, [supra, 466 U.S. 688] ('Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'). The evidence [Beata] presented could assist the defense because of the information she provided about the petitioner's alcohol consumption and potential for unpredictable violent behavior. The court acknowledges that her testimony also carried the risk of not helping, or even potentially harming, the petitioner's defenses. But this court cannot substitute its own assessment for that made midtrial by defense counsel, who had a reasonable strategy under the circumstances. Accordingly, the petitioner has failed to prove that trial counsel were deficient in their performance."

Because we conclude that the habeas court properly found that the petitioner failed to show prejudice relating to counsel's handling of Beata's testimony, we do not address the court's finding that there was no deficient performance.